### S10A0472. VERGARA v. THE STATE.
(695 SE2d 215)

HUNSTEIN, Chief Justice.

Ignacio Vergara was convicted of murder in the shooting deaths of Alejandro Santana and Francesco Saucedo and was sentenced to two consecutive life sentences without the possibility of parole. We find no error in the trial court's denial of his motion for new trial[1] and, for the reasons that follow, we affirm in part.

---

[1] The crimes occurred on March 13, 2002. Vergara was indicted May 7, 2002 in Hall County on two counts of malice murder, two counts of felony murder, armed robbery, the aggravated battery of Santana, two counts of aggravated assault for each victim and trafficking in cocaine. The State filed its notice of intent to seek the death penalty on September 4, 2002. This Court granted interim review to address issues arising out of certain statements Vergara made to police officers, see *Vergara v. State*, 283 Ga. 175 (657 SE2d 863) (2008), and, after filing of the remittitur on March 25, 2008, a jury trial was held starting on August 11, 2008. The trial court granted Vergara a directed verdict on the trafficking charge and the jury found Vergara guilty on August 26, 2008 of the remaining charges. The jury returned its verdict on sentencing as to the statutory aggravating circumstances on August 28, 2008, finding that the murder of Santana was committed while Vergara was engaged in the commission of the capital felonies of armed robbery and the murder of Saucedo, see OCGA § 17-10-30 (b) (2), and that Vergara caused or directed another to commit murder. See id. at (b) (6). The jury recommended that Vergara be sentenced to life without parole as to each murder. That same day the trial court sentenced Vergara to two consecutive sentences of life without parole and four consecutive 20-year sentences for armed robbery, aggravated battery, and the two aggravated assaults. The felony murder convictions were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Vergara's timely filed motion for new trial, as amended, was denied

1. Evidence authorized the jury to find that appellant arranged to purchase two kilograms of cocaine, even though appellant had no money to pay for the drugs. On the day of the murders, Saucedo used his girlfriend's cellular telephone to call appellant six times. Saucedo, together with Santana who was delivering the cocaine, then rendezvoused with appellant and co-indictee, Brigido Soto. The four men traveled in two separate cars to a remote location in south Hall County that appellant had previously selected. During the trip, appellant told Soto of his plan to kill the victims in order to take the cocaine. Appellant provided Soto with a gun, which appellant loaded after wiping the bullets to avoid leaving fingerprints; gave Soto a large dose of cocaine, which appellant insisted Soto consume in the car; and ordered Soto to kill the victims once he received appellant's signal. Upon reaching their location, appellant and Soto joined the victims in their car. When the victims learned that appellant did not have the money for the drugs, appellant borrowed the cell phone Saucedo was using and stepped outside the car, pretending to call and make arrangements for the money. When Soto followed, appellant gave him the signal and Soto shot both victims until the gun jammed. Soto unjammed the weapon and continued firing until he ran out of bullets. Soto then obeyed appellant's order to beat Santana, who was still moving; Soto hit Santana in the head with the butt of the gun, repeatedly fracturing the skull with such force that the skull was driven into the victim's brain. Both victims died at the scene from their injuries. Appellant and Soto searched the vehicle and removed two wrapped bricks of cocaine from the floorboard before driving away. Believing it would prevent tracing of the calls Saucedo had earlier made to him, appellant also took with him the cell phone Saucedo had allowed him to use. Appellant turned it off and threw it out of the car into the roadway. Appellant later dropped off Soto but kept the gun and the two bricks of cocaine.

Police officers investigating the murders obtained the records of the cell phone Saucedo had used, which, in turn, led them to appellant because of the six calls Saucedo had made to him. After initially denying any involvement, appellant later made statements in which he admitted being present at the murders but claimed that Soto had directed him to arrange the drug deal and that Soto unilaterally chose to fire on the victims, beat Santana and take the cell phone, which Soto then ordered appellant to throw out the window. Soto, who pled guilty in exchange for two consecutive life sentences without possibility of parole, testified at trial against appellant.

September 24, 2009. A notice of appeal was filed October 1, 2009. The appeal was docketed November 25, 2009 and was orally argued March 9, 2010.

(a) Construed to support the verdicts, the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt as a party to the malice murders of Santana and Saucedo and the aggravated battery of Santana. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Griffin v. State*, 280 Ga. 683 (631 SE2d 671) (2006) (evidence sufficient to find aggravating circumstances under OCGA § 17-10-30 (b)). See also *Metz v. State*, 284 Ga. 614 (1) (669 SE2d 121) (2008) (party to crime may be charged and convicted of its commission under OCGA § 16-2-20 (a)).

(b) Appellant was convicted of and sentenced for both the malice murders of the two victims and the aggravated assaults of those victims. Although there is no merger of these crimes as a matter of law, our review of the record establishes that the aggravated assault convictions merged into the malice murder convictions as a matter of fact. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). Therefore, the separate judgments of conviction and sentences for the aggravated assaults must be vacated and the case remanded to the trial court for resentencing. See *Mikell v. State*, 286 Ga. 722 (3) (690 SE2d 858) (2010). This holding thus moots appellant's contention arising out of alleged errors in the trial court's charge to the jury about the elements of aggravated assault. See *Cornell v. State*, 277 Ga. 228 (5) (587 SE2d 652) (2003).

(c) We find no merit in appellant's contention that his conviction for armed robbery should be reversed because the victim's cellular telephone was not taken by use of an offensive weapon.[2] Although the evidence reflected that appellant initially held the cell phone with the consent of Saucedo, the taking of the cell phone was a robbery because appellant did not divest Saucedo of legal possession of the cell phone until he prevented Saucedo, by having him killed, from seeking its return. See *Weldon v. State*, 279 Ga. 185 (611 SE2d 36) (2005); *Woods v. State*, 269 Ga. 60 (2) (495 SE2d 282) (1998). See also *Cantrell v. State*, 184 Ga. App. 384 (1) (361 SE2d 689) (1987). Contrary to appellant's argument, nothing in OCGA § 16-8-41 (a) or *Woods v. State*, supra, limits a conviction for armed robbery to the particular item a defendant originally intended to take by means of the use of an offensive weapon. See *Hudson v. State*, 234 Ga. App. 895, 897 (1) (a) (508 SE2d 682) (1998) (armed robbery conviction upheld where defendant took murder victim's car as an "afterthought" when unable to locate keys to his own car). Moreover, aside from the fact that the evidence fully authorized the jury to find that

---

[2] A directed verdict was granted as to that part of the armed robbery charge based on the taking of the cocaine.

appellant borrowed the cell phone intending never to return it due to appellant's concern that it could be used to connect him to the victims' murders, where, as here, the evidence is sufficient to authorize a finding that the theft was completed *after* force was employed against the victim, a conviction for armed robbery is authorized regardless of when the intent to take the victim's property arose. *Francis v. State*, 266 Ga. 69 (1) (463 SE2d 859) (1995). Accordingly, we find that the evidence was sufficient to enable the jury to find beyond a reasonable doubt that appellant was guilty of armed robbery. *Jackson v. Virginia*, supra.

2. In his first enumerated error, appellant asserts that the trial court unlawfully commented on the evidence in violation of OCGA § 17-8-57 when it instructed the jury that "an armed robbery may be committed by killing the victim first and then taking the property." See *Lee v. State*, 270 Ga. 798, 801 (5) (514 SE2d 1) (1999) ("[i]t is well-settled that a defendant commits a robbery if he kills the victim first and then takes the victim's property"). OCGA § 17-8-57 is violated by the giving of a jury charge only when that charge assumes certain things as facts and intimates to the jury what the judge believes the evidence to be. *Sedlak v. State*, 275 Ga. 746 (2) (d) (571 SE2d 721) (2002). The challenged charge clearly neither assumed certain things as facts nor intimated to the jury what the trial judge believed the evidence to be. It appears that appellant is actually arguing that the trial court "gave an incorrect statement of law," but couched his enumeration using OCGA § 17-8-57[3] because appellant failed to object to the charge at his trial in 2008. See OCGA § 17-8-58 (b) (amended in 2007) (failure to inform the court of specific objections to jury charges before the jury retires to deliberate precludes appellate review). We decline to allow parties to circumvent the requirements of OCGA § 17-8-58 with such a maneuver.

3. Appellant contends he received ineffective assistance of trial counsel. In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), appellant "must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. [Cit.]" *White v. State*, 283 Ga. 566, 569 (4) (662 SE2d 131) (2008). We conclude appellant failed to make the requisite showings.

(a) Appellant asserts that trial counsel was ineffective for failing to request a jury instruction on accessory after the fact. "[A] person

---

[3] The violation of OCGA § 17-8-57 will always constitute "plain error," meaning that the failure to object at trial will not waive the issue on appeal. *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010).

cannot be both a party to a crime and an accessory after the fact." (Footnote omitted.) *State v. Freeman*, 272 Ga. 813, 815 (2) (537 SE2d 92) (2000). An accessory after the fact "'is not considered an accomplice to the underlying crime itself, but is guilty of a separate, substantive offense in the nature of an obstruction of justice.'" (Footnote omitted.) Id. It is uncontroverted that appellant was not indicted for both murder and hindering the apprehension of a criminal or any other offense in the nature of an obstruction of justice. Compare *Jordan v. State*, 272 Ga. 395 (2) (530 SE2d 192) (2000). Thus, regardless whether any evidence would have authorized the jury to conclude that appellant's connection with the crime of murder charged in the bill of indictment was that of an accessory after the fact, the trial court would not have been authorized to give any charge on accessory after the fact. That is because

> [t]he crime of being an accessory after the fact is one that is not included within the charge of murder, but is an independent crime which could not be at issue on the charge made. [Cits.] The court should not instruct the jury on any lesser offense not embraced in the charge made in the bill of indictment. [Cits.]

*Pressley v. State*, 207 Ga. 274, 280 (5) (61 SE2d 113) (1950). See also *Garcia v. State*, 267 Ga. 257 (9) (477 SE2d 112) (1996). "Inasmuch as a jury charge on [accessory after the fact] was not warranted, trial counsel cannot be found ineffective for failing to request it. [Cit.]" *Williams v. State*, 279 Ga. 600, 603 (3) (b) (619 SE2d 649) (2005).

(b) "It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citations and punctuation omitted.) *Hambrick v. State*, 256 Ga. 688, 690 (3) (353 SE2d 177) (1987). Our review of the record establishes that appellant's arguments regarding one portion of the trial court's armed robbery instruction are completely obviated by other portions of that instruction not quoted by appellant. Counsel cannot be ineffective for failing to make a meritless objection to a proper charge. See *Mikell v. State*, supra, 286 Ga. at 724 (2) (b).

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.*

DECIDED MAY 17, 2010.

*Brian Steel*, for appellant.

*Lee Darragh, District Attorney, Alison W. Toller, Assistant District Attorney, Thurbert E. Baker, Attorney General,* for appellee.